MOBIL OIL CORPORATION, Atlantic Richfield Company, Gulf Oil Corporation, United ·Refining Company, Chevron U.S.A. Inc., Amoco Oil Company, Texaco Inc. and Exxon Corporation, Plaintiffs-Appellees,

v.

James H. TULLY, Jr., Thomas H. Lynch, and Francis Koenig, Constituting the New York State Tax Commission; Robert Abrams, Attorney General of the State of New York; and James L. LaRocca, Commissioner of the New York State Energy Office, Defendants-Appellants.

AMERADA HESS CORPORATION, Plaintiff-Appellee,

v.

James H. TULLY, Jr., Thomas H. Lynch, and Francis Koenig, Constituting the New York State Tax Commission; Robert Abrams, Attorney General of the State of New York; and James L. LaRocca, Commissioner of the New York State Energy Office, Defendants-Appellants.

NEW ENGLAND PETROLEUM CORPORATION, Plaintiff-Appellee,

v.

James H. TULLY, Jr., Commissioner of Taxation and Finance of the State of New York, and Robert Abrams, Attorney General, State of New York, Defendants-Appellants.

No. 2–29 to 2–31.

Temporary Emergency Court of Appeals.

Argued April 2, 1981.

Decided June 10, 1981.

See also, 2 Cir., 639 F.2d 912.

Edward N. Costikyan, Paul, Weiss, Rifkind, Wharton & Garrison, New York City

(Simon H. Rifkind, Richard D. Friedman and Michael C. Lasky, New York City, on the brief), for defendants-appellants Tully, Lynch and Koenig.

Shirley Adelson Siegel, Sol. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., on the brief), for defendants-appellants Robert Abrams and James L. LaRocca.

Thomas R. Trowbridge III, Donovan, Leisure, Newton & Irvine, New York City (James P. Shaughnessy, Washington, D.C., and John M. Freyer, Bond, Schoeneck & King, Syracuse, N.Y., on the brief), for plaintiffs-appellees Mobil Oil Corp., Atlantic Richfield Co., United Refining Co., Chevron U.S.A. Inc., Amoco Oil Co., Texaco Inc. and Exxon Corp.; Edward F. Gerber, Syracuse, N.Y. on the brief for plaintiff-appellee Gulf Oil Corp.; Stanley D. Robinson and Randolph S. Sherman, Kaye, Scholer, Fierman, Hays & Handler, New York City, and William L. Allen, Jr., Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., on the brief for plaintiff-appellee Amerada Hess Corp.

Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, New York City (James C. Blair, George Weisz, New York City, Sara D. Schotland, Washington, D.C., and Warner M. Bouck, Bouck, Holloway & Kiernan, Albany, N.Y., on the brief), for plaintiff-appellee New England Petroleum Corp.; Alfred E. Keane, Daniel A. Piloseno, Texaco Inc., White Plains, N.Y., D. Joseph Potvin, Exxon Company U.S.A., Houston Tex.; and Arthur C. Vangeli and Sydney M. Avent, Bala Cynwyd, Pa., of counsel.

Carl R. Ajello, Atty. Gen., State of Conn., Hartford, Conn., Peter W. Gillies, Deputy Atty. Gen., Ralph G. Murphy, Richard K. Greenberg and Robert L. Klein, Asst. Attys. Gen., Hartford, Conn., amicus curiae State of Conn.

Before METZNER, PECK and LACEY, Judges.

METZNER, Judge.

This is an appeal from a judgment entered on an order granting plaintiffs' motion for summary judgment.

In June of 1980, New York State established a 2 per cent tax on the gross receipts of oil companies limited to their revenues derived from activities within the state. 1980 N.Y. Laws ch. 271, 272; N.Y. Tax Law § 182 (McKinney Supp.1980). The statute further provided that the oil companies could not pass the cost of the tax on to consumers by increasing the sales price of their products in this state. Ten oil companies subject to the tax instituted suit to enjoin the anti-passthrough provision based on the Supremacy Clause of the United States Constitution (Art. VI, cl. 2).

Plaintiffs claim that the state statute is in conflict with the Emergency Petroleum Allocation Act (EPAA) (Pub.L. 93–159, 15 U.S.C. § 751 et seq.) and the regulations adopted thereunder. The district court, 499 F.Supp. 888, agreed with that position and appeals followed to this court and the Court of Appeals for the Second Circuit.

The prosecution of the appeal in this court was stayed pending determination by the Court of Appeals.

On January 28, 1981 the Court of Appeals held that the district court in disposing of the question of preemption, had disposed of an EPAA issue over which this court had exclusive appellate jurisdiction. *Mobil Oil Corp. v. Tully*, 639 F.2d 912 (2d Cir. 1981).[1]

The question before this court is limited to whether the anti-passthrough provision of the New York Tax Law is invalid under the Supremacy Clause. The plaintiffs do not challenge the imposition of the tax. However, an affirmance of the district court's finding of unconstitutionality will void the tax. Section 12, L.1980 c. 271, as added by L.1980, c. 272, § 5.

In *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), the Court set forth the criteria

---

1. The Court of Appeals held that it had jurisdiction to decide that the district court was not deprived of jurisdiction by the Tax Injunction Act (28 U.S.C. § 1341) because the statute under attack is an exercise of the police power rather than the taxing power of the State.

to be applied in determining whether the exercise by a state of its police power in the adoption of a statute may be challenged successfully under the Supremacy Clause.

"Congress legislated here in a field which the States have traditionally occupied. See *Munn v. Illinois*, 94 U.S. 113 [24 L.Ed. 77]; *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 148–149 [64 S.Ct. 474, 477–478, 88 L.Ed. 635]. So we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 [47 S.Ct. 207, 71 L.Ed. 432]; *Allen-Bradley Local v. Wisconsin Employment Board*, 315 U.S. 740, 749 [62 S.Ct. 820, 825, 86 L.Ed. 1154]. Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. *Pennsylvania R. Co. v. Public Service Comm'n*, 250 U.S. 566, 569 [40 S.Ct. 36, 37, 63 L.Ed. 1142]; *Cloverleaf Butter Co. v. Patterson*, 315 U.S. 148 [61 S.Ct. 834, 85 L.Ed. 1515]. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. *Hines v. Davidowitz*, 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581]. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. *Southern R. Co. v. Railroad Commission*, 236 U.S. 439 [35 S.Ct. 304, 59 L.Ed. 661]; *Charleston & W. C. R. Co. v. Varnville Co.*, 237 U.S. 597 [35 S.Ct. 715, 59 L.Ed. 1137]; *New York Central R. Co. v. Winfield*, 244 U.S. 147 [37 S.Ct. 546, 61 L.Ed. 1045]; *Napier v. Atlantic Coast Line R. Co., supra.*"

█ Preemption in this area is compelled "whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

█ Even if Congress has not foreclosed the field, a state statute is void to the extent of actual conflict with a federal statute. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 165, 98 S.Ct. 988, 994, 998, 55 L.Ed.2d 179 (1978); *Hill v. Florida*, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945). This standard was recently outlined by the Supreme Court in *Chicago and North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981):

"... when Congress has chosen to legislate pursuant to its constitutional powers, then a court must find local law pre-empted by federal regulation whenever the 'challenged state statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."' *Perez v. Campbell*, 402 U.S. 637, 649 [91 S.Ct. 1704, 1711, 29 L.Ed.2d 233] (1971) quoting *Hines v. Davidowitz* ... supra, [312 U.S.] at 67–68 [61 S.Ct. at 404]."

Judge McCurn found it unnecessary to decide whether Congress had intended that there be exclusive federal control over allocation and pricing of petroleum products, resting his decision on the "conflict" standard for preemption. We, too, do not reach the "occupation of the field" question; we find sufficient basis under the conflict standard to exclude the State from exercising its police power in enacting the anti-pass-through provision.

The procedure in analyzing possible preemption under the conflict standard is to compare the two statutes; and second, to determine whether there is a conflict between them. This second inquiry focuses on the nature of the activity which the state has attempted to regulate, rather than the method of regulation used. *Chicago and North Western Transportation Co. v. Kalo Brick & Tile Co., supra*, 450 U.S. at 317–18, 101 S.Ct. at 1130.

█ With the advent of the Arab oil embargo in 1973, this country was faced with a

national crisis in the flow of energy supplies and inflation. Congress addressed the problem in the passage of the EPAA. The statute stated that shortages of crude oil, residual fuel oil and refined petroleum products existed which would create severe economic hardships that would jeopardize the normal flow of commerce and "constitute a national energy crisis which is a threat to the public health, safety, and welfare, and can be averted or minimized effectively through prompt action by the Executive branch of Government." Section 751(a)(3). The statute went on to say that "the authority granted under this chapter shall be exercised for the purpose of minimizing the adverse impacts of such shortages or dislocations on the American people and the domestic economy." Section 751(b). Section 753(b)(1)(F) states, as one of the objectives of the statute, the "equitable distribution of crude oil, residual fuel oil, and refined petroleum products at equitable prices . . . ."

Senator Jackson, as floor manager of the bill, said, "Our fuel shortage problems are national problems; they must be recognized and resolved at the Federal level." 119 Cong.Rec. 17764 (1973). Finally, the conferees who submitted the bill for final passage by the Congress said:

"On the other hand, it is contemplated that prices for allocated fuels will be set at levels or pursuant to methods which will permit adequate compensation to assure that private property is not implicitly confiscated by the government." [1973] U.S.Code Cong. & Admin.News, pp. 2582, 2702–3

In adopting the 1975 amendments to EPAA, known as the Energy Policy and Conservation Act (EPCA), Congress reiterated its goal that "the Arab boycott raised public consciousness of energy problems and underscored more effectively than could any other event the need for policy decisions at the national level." [1975] U.S. Code Cong. & Admin.News, pp. 1762, 1763.

The EPAA and the regulations form a framework for federal control of price and allocation of petroleum prices. However,

the tenor of federal regulation of petroleum products has substantially changed since this action was brought and the decision of the district court was handed down.

In 1975 Congress gave the President authority to exempt, in his discretion, "crude oil, residual fuel oil, or any refined petroleum product or refined product category" from price and allocation regulations under the EPAA, consistent with the nine statutory objectives noted above. 15 U.S.C. § 760a, Energy Policy and Conservation Act, Pub.L. No. 94–163, 89 Stat. 871 (1975). The President has standby authority to reimpose regulation of any oil or refined product category which is exempted. 15 U.S.C. § 760a(f).

At the time this matter was submitted to the court below for determination, only gasoline, propane, and certain natural gas liquids remained subject to the price regulations. All other petroleum products had been exempted. On January 28, 1981, while this case was awaiting appellate disposition, President Reagan exercised his authority to exempt the remaining products. 46 Fed. Reg. 9909. Consequently, at the present time there are no price and allocation controls in existence.

However, despite the exemption of all petroleum products from price and allocation regulations by executive order, the federal slate has not been wiped clean. The standby authority of the President to reimpose controls (15 U.S.C. § 760a(f)) remains in effect, at least until that authority expires on September 30, 1981. 15 U.S.C. § 760g.

The regulations which were promulgated under the EPAA are a complex set of rules to allocate petroleum products; control prices charged; and dictate the method of computation of any increases in price. Subpart E, 10 C.F.R. §§ 212.81–85. Prices are controlled by limiting refiners to a "maximum allowable price," computed as the weighted average price at which the covered product was sold on May 15, 1973, plus defined increased product and nonproduct costs since that date. 10 C.F.R. §§ 212.82(6) and 212.83.

In 1977 "federal, state and local tax increases," excluding income taxes, were included in the nonproduct costs which the refiners were permitted to use to compute their maximum allowable price. 10 C.F.R. § 212.83(c)(2)(iii)(E)(7), 42 Fed.Reg. 5025 (January 27, 1977). Property, excise, franchise and similar taxes are explicitly included.

Turning now to the New York State statute, its purpose was to raise money to assist the public transportation system in the state which is in dire financial straits. To achieve this end, the state enacted a franchise tax, New York Tax Law § 182 (McKinney Supp.1980), and, as pointed out above, this tax was within the group of taxes which an oil company under the federal regulations could have passed through to the consumer. The consuming public was to be protected against an increase in retail cost by the anti-passthrough provision and the fires of inflation would not be fed as a result.

The anti-passthrough provision is clearly a price control measure in exercise of the State's police power. The stated purpose of the provision is to prevent "further increases in the price of petroleum products to consumers," and to prevent the tax from "fueling inflation by prohibiting pass through of such tax to the consumers of this state." N.Y. Act, Ch. 272, § 1. As the Court of Appeals noted in another context, "[t]his objective is certainly not an exercise of a taxing power but a police power affecting the price structure of petroleum products." *Mobil Oil Corp. v. Tully, supra* at 918. We agree with this observation.

The federal controls were imposed to assure equitable distribution of oil products and equitable prices. The latter requires a fair balance between seller and buyer, and between geographical areas. The conferees stated that the sellers were to be assured adequate compensation to prevent the confiscation by the government of private property.

The state tax upsets this balance. The sellers will receive a greatly diminished net income from sales in this state, as compared to neighboring states.

Furthermore, the sellers, in order to recoup this loss, will try to pass on the cost of the franchise tax to purchasers in other states. To the extent that they are able to pass on the tax, the goal of equitable pricing is not met.

Appellants claim that the EPAA by its terms precludes a finding of preemption in this case. Section 755(b) provides:

"The regulation under section 753 of this title and any order issued thereunder shall pre-empt any provision of any program for the allocation of crude oil, residual fuel oil, or any refined petroleum product established by any State or local government if such provision is in conflict with such regulation or any such order."

The argument is made that since this section specifies preemption only if a state law providing for allocation of a product is in conflict with a regulation issued pursuant to Section 753, there can be no preemption if the conflict exists outside that narrowly defined area. Appellants rely on a letter from the Acting General Counsel of the Department of Energy (DOE) to the Special Counsel to the New York State Tax Commission. The letter states that in the opinion of the writer, "the Emergency Petroleum Allocation Act itself displaces State law only to the extent that that statute or its implementing regulations conflict with state law . . . ." It is interesting to note that the letter defines the area of preemption in slightly broader terms than appellants do—federal statute as well as regulations in conflict with state law.

The Supreme Court in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), set forth the criteria for judging the effectiveness of this letter. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

The writer of the letter took care to limit its effectiveness by stating as a caveat,

**502**

"First, the time within which I was advised to require a response to this question did not permit an exhaustive analysis of the question you posed." Furthermore, as Judge McCurn said, "the conclusion in the letter was, in light of *Jones*, reached either with reference to, or through the correct application of, judicially determined preemption principles."

Finally, under DOE's own regulations, the letter is of little value. It appears that the request to DOE for an interpretation did not comply with its requirements for such an interpretation. Replies to such requests cannot be considered as interpretations but only as "providing general information." 10 C.F.R. § 205.80.

*Jones v. Rath Packing Co.*, 430 U.S. 519, 540–41, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977) determined that even though an express preemption provision did not invalidate a state law, the question still had to be determined "whether the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" It borders on the ridiculous to conclude, in the context of the crisis being addressed here, that there may be preemption in the area of allocations, but there is no preemption in the area of pricing.

Any attempt by New York State to affect the structure of prices charged by the oil companies pursuant to federal regulation is barred by conflict with the federal scheme. The EPCA expires by its terms on September 30, 1981. 15 U.S.C. § 760g. In the meantime, the goals to control the impact of OPEC determinations regarding production and prices are viable. At the present time price decontrol has been determined by the President to be the best method to achieve an enunciated goal. The state statute under attack here is an instrument of price control and in conflict with the objectives of the program. See *Ray v. Atlantic Richfield*, 435 U.S. 151, 178, 98 S.Ct. 988, 1004, 55 L.Ed.2d 179 (1978).

When the statute expires in September 1981, it will signal the end of federal concern in this area. Until that time the state statute is in conflict with the federal statute and regulations.

Judgment affirmed.