TULLY ET AL. *v.* MOBIL OIL CORP. ET AL.

No. 81-96.   Decided February 22, 1982

PER CURIAM.

In June 1980, New York State established a two percent tax on the gross receipts of oil companies limited to their revenues derived from their activities within the State.   N. Y. Tax Law § 182, ch. 272 (McKinney Supp. 1980).   Desiring that the tax actually be borne by the oil companies, its intended objects, rather than by consumers, the New York

Legislature prohibited the companies from passing on the cost of the tax in the prices of their products sold in New York. *Ibid.* The passthrough prohibition was sufficiently vital that the law provided that if the prohibition was "adjudged by any court of competent jurisdiction to be invalid and after exhaustion of all further judicial review" the tax would cease to exist on the 10th day thereafter. Ch. 272, § 12(a). All tax liabilities accrued to that day, however, would remain in full force and effect. It was also provided that the tax would self-destruct 10 days after any court "issues any order, judgment, injunction or stay prohibiting" the enforcement of the antipassthrough provision. Ch. 272, § 12(b).

The appellees are 10 oil companies subject to the tax who instituted suit to enjoin the antipassthrough provision, claiming that it was in conflict with and therefore pre-empted by federal price control authority under the Emergency Petroleum Allocation Act (EPAA), 15 U. S. C. § 751 *et seq.* The District Court agreed with that position and enjoined enforcement of the provision. 499 F. Supp. 888 (NDNY 1980). The Court of Appeals for the Second Circuit held that appellate consideration of the pre-emption issue was a matter for the Temporary Emergency Court of Appeals (TECA). 639 F. 2d 912, cert. denied *sub nom. Tully* v. *New England Petroleum Corp.*, 452 U. S. 967 (1981). That court, in turn, affirmed the District Court's decision, but noted that the federal statute would expire by its own terms in September 1981, and that expiration of the Act "will signal the end of federal concern in this area." 653 F. 2d 497, 502 (1981).

New York State tax officials then appealed TECA's decision to this Court. We now vacate the judgment and remand the case to TECA for reconsideration in light of the expiration of federal price control authority.[1]

---

[1] We find that this is a proper appeal under 28 U. S. C. § 1254(2). The appellees argue that this Court only has jurisdiction to review TECA deci-

The normal rule in a civil case is that we judge it in accordance with the law as it exists at the time of our decision. *Kremens* v. *Bartley*, 431 U. S. 119, 129 (1977); *Fusari* v. *Steinberg*, 419 U. S. 379, 387 (1975). The expiration date for the federal statute has come and gone; the only barrier to the enforcement of the antipassthrough provision no longer exists. However, the injunction entered by the District Court and affirmed by TECA did not terminate on October 1, 1981, the date that TECA acknowledged to signal the end of federal concern in the area. Thus, in its present form the declaration of the invalidity of the antipassthrough provision and the accompanying injunction against enforcing it have no current validity and must be set aside.[2]

---

sions by writ of certiorari. They point to the jurisdictional provisions incorporated in the Act which provide that "[w]ithin thirty days after entry of any judgment or order by the [TECA], a petition for a writ of certiorari may be filed in the Supreme Court of the United States, and thereupon the judgment or order shall be subject to review by the Supreme Court in the same manner as a judgment of a United States court of appeals as provided in [28 U. S. C. § 1254]." § 211(g) of the Economic Stabilization Act of 1970 (ESA), 84 Stat. 800, note following 12 U. S. C. § 1904, incorporated by reference in the EPAA, 15 U. S. C. § 754(a). There is no indication that this provision, obviously directed at expediting review, was intended to substitute for § 1254(2)'s general grant of appellate jurisdiction over decisions from the "courts of appeals" invalidating state statutes on federal constitutional grounds. Congress has granted TECA "the powers of a circuit court of appeals with respect to the jurisdiction conferred upon it." ESA § 211(b)(1). It is logical that Congress intended its exercise of such powers to be subject to the same review.

[2] To be sure, the expiration provision contained in the EPAA states that "such expiration shall not affect any action or pending proceedings, administrative, civil, or criminal, not finally determined on such date, nor any administrative, civil, or criminal action or proceeding, whether or not pending, based upon any act committed or liability incurred prior to such expiration date." 15 U. S. C. § 760g.

Whatever bearing this saving clause may have upon other aspects of the case, it surely cannot mean that, despite the expiration of the pre-empting federal law, New York should be permanently enjoined from enforcing its antipassthrough provision.

Ordinarily, the determination that the law has so changed as to eliminate a conflict between federal and state law would conclude the dispute. In this case, however, both parties insist that an important controversy continues over the appellees' legal authority to pass through to consumers taxes that were paid or accrued prior to October 1. They also suggest that the validity of the New York tax itself is in question because of the "self-destruct" provisions of the statute. These matters are relevant to this litigation because, being predicated on the declaration of invalidity of the New York statute with respect to the period prior to October 1, 1981, they may constitute "remaining live issues [which] supply the constitutional requirement of a case or controversy." *Powell* v. *McCormack*, 395 U. S. 486, 497 (1969). Now that the operation of the passthrough prohibition is not blocked by conflicting federal law, a question arises as to the degree to which the resolution of these secondary issues will turn on the earlier finding of pre-emption, even if correct. Is there, for example, any federal interest that would prevent the State of New York from now enforcing its law so as to prevent appellees from passing through taxes which accrued prior to October 1?

We express no opinion on the ultimate merit of these contentions. We leave to TECA, a court intimately familiar with the intricacies of federal energy regulation, the task of deciding in the first instance what effect, if any, the expiration of federal price authority has on these collateral matters.[3]

Regardless of what TECA may decide with respect to those issues, it is clear that the judgment and injunction are not appropriately framed for this Court to review. There-

---

[3] One question which arises is whether the saving clause in the federal statute, see n. 2, *supra*, applies here or whether it should be read as concerned only with administrative or judicial proceedings brought under the EPAA to enforce or otherwise adjudicate liabilities under that statute.

fore, the judgment of the Court of Appeals is vacated, and the case is remanded to TECA for reconsideration in light of the expiration of federal price control authority under the EPAA.

*So ordered.*

JUSTICE BRENNAN would set the case for oral argument.

JUSTICE STEVENS, dissenting.

Federal price control authority under the Emergency Petroleum Allocation Act, 15 U. S. C. § 751 *et seq.*, pre-empted the authority of the State of New York to control prices of petroleum products. In this case, the Temporary Emergency Court of Appeals held that the antipassthrough provision of N. Y. Tax Law § 182 (McKinney Supp. 1980) was "clearly a price control measure"[1] that could not be enforced while the federal authority was effective. The court recognized, however, that the federal bar would expire on September 30, 1981, and that the import of its decision was limited to the period prior to that date.[2]

---

[1] "The anti-passthrough provision is clearly a price control measure in exercise of the State's police power. The stated purpose of the provision is to prevent 'further increases in the price of petroleum products to consumers,' and to prevent the tax from 'fueling inflation by prohibiting pass through of such tax to the consumers of this state.' N. Y. Act, Ch. 272, § 1. As the Court of Appeals noted in another context, '[t]his objective is certainly not an exercise of a taxing power but a police power affecting the price structure of petroleum products.' *Mobil Oil Corp.* v. *Tully, supra*, at 918. We agree with this observation." 653 F. 2d 497, 501 (TECA 1981).

[2] "Any attempt by New York State to affect the structure of prices charged by the oil companies pursuant to federal regulation is barred by conflict with the federal scheme. The EPCA [Energy Policy Conservation Act, which added 15 U. S. C. § 760g to the EPAA] expires by its terms on September 30, 1981. 15 U. S. C. § 760g. In the meantime, the goals to control the impact of OPEC determinations regarding production and prices are viable. At the present time price decontrol has been determined by the President to be the best method to achieve an enunciated goal. The state statute under attack here is an instrument of price control and in con-

In its appeal to this Court, the New York State Tax Commission does not ask us to consider any question concerning the meaning or enforceability of its laws during the period after the expiration of federal price control authority. Such questions are not our business and are not presented by this litigation. Rather, the appeal by the Commission presents the question whether the then-existing federal price control authority prevented the State from fixing the economic burden of a tax imposed upon companies that sell petroleum products.[3] The Temporary Emergency Court of Appeals

flict with the objectives of the program. See *Ray* v. *Atlantic Richfield*, 435 U. S. 151, 178 . . . (1978).

"When the statute expires in September 1981, it will signal the end of federal concern in this area. Until that time the state statute is in conflict with the federal statute and regulations." *Id.*, at 502.

[3] The three questions presented in the jurisdictional statement read as follows:

"1. Does the Tax Injunction Act, 28 U. S. C. § 1341, deprive federal district courts of jurisdiction to enjoin enforcement of a provision of a New York State tax law when the effect of the injunction would be to terminate the assessment, levy, and collection of the tax?

"2. Did the Energy Policy and Conservation Act of 1975 and the revocation, pursuant to its terms, by the Department of Energy of regulations that had set maximum allowable prices for certain petroleum products, prohibit the states from fixing the economic burden of a tax imposed upon companies that sell petroleum products?

"3. Did those federal regulations, when they were effective, prevent the states from exercising such a power?" Juris. Statement ii.

I am satisfied that the Court of Appeals for the Second Circuit correctly answered the first question when it held that the antipassthrough provision of the New York statute was an exercise of the State's police power and not its taxing power. 639 F. 2d 912, 917–918, cert. denied *sub nom. Tully* v. *New England Petroleum Corp.*, 452 U. S. 967 (1981). The injunction entered by the District Court did not enjoin New York from collecting the tax; it merely enjoined the enforcement of the antipassthrough provision. Unless that injunction is construed to have expired by its terms, it will, of course, be subject to modification, on the Commission's motion, to eliminate any federal objection to the enforcement of the antipassthrough provision subsequent to the expiration of federal price control authority.

correctly answered that question. Since the subsequent expiration of the federal authority has no bearing on that question, I simply would affirm its judgment.[4]

---

[4] I agree with the Court that our appellate jurisdiction has properly been invoked. See *ante*, at 246–247, n. 1.