**Ricky Mark GRAHAM, Appellant,**

v.

**David P. DAVIS, et al.**

**No. 88–7242.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1989.

Decided Aug. 1, 1989.

James P. Schaller, with whom David H. Cox was on the brief, for appellant. Mary Lynn Reed, Washington, D.C., also entered an appearance for appellant.

Mitchell B. Weitzman, with whom Robert E. Deso, Washington, D.C., was on the brief, for appellee Cauley.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees Davis, et al.

Before EDWARDS, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellant Ricky Mark Graham, a Metropolitan Police Department Officer, was involved in an altercation at the scene of an arrest with a fellow officer, Larry Cauley. Both were in plain clothes, and neither knew the other was a policeman. During the struggle, Cauley and a third officer, David Davis, shot Graham. Graham brought suit in the district court alleging that both Cauley and Davis had violated his constitutional rights and had committed an assault and battery against him. He also claimed that the District of Columbia had failed to train its police officers properly. Cauley counterclaimed against Graham for alleged constitutional and common law violations. Graham challenges two aspects of the jury instructions given by the district court at the ensuing trial. He also attacks the court's dismissal with prejudice of his claim against the District for negligent training.

We find that Graham failed to preserve for appeal his objection to the district court's instructions regarding self-defense, and that the court properly dismissed Gra-

ham's negligent training claim against the District. We conclude, however, that the district court erred in instructing the jury that if it found that both Graham and Cauley used excessive force during the altercation, neither could recover from the other on their respective constitutional claims.

## I. BACKGROUND

On January 30, 1986, Graham was on a "casual clothes" assignment with Officer Carlos Hilliard. When Hilliard left their car to make a phone call, an individual approached him and offered to sell him narcotics. Hilliard attempted to arrest the man, and Graham got out of the car to assist him. The suspect resisted arrest and attempted to flee; Graham subdued him by handcuffing and sitting on him.

A crowd of bystanders began shouting obscenities at the officers. Graham requested backup police assistance over his portable hand radio. After a marked patrol car arrived on the scene with two uniformed officers, Graham cancelled his request for police assistance. Hilliard and Graham then began to direct the crowd away from the marked patrol car and the prisoner.

It was at this time that appellee Larry Cauley, a sixteen-year Metropolitan Police Department ("MPD") veteran, and another officer arrived at the scene. Both were dressed in casual clothes and were riding in an unmarked police car. As Cauley left the car, he saw that the two uniformed officers and Hilliard, whom he recognized as a police officer, were attempting to subdue the crowd.

What happened next is subject to dispute. According to Graham, whose testimony was largely corroborated by one of the uniformed officers, Cauley suddenly seized Graham's right shoulder from behind. According to Cauley, as he approached the scene, Graham grabbed him and stated, "uh uh, where ... do you think you're going," and then struck him on the head. The parties agree that neither man identified himself as a police officer at this time or at any other time during the ensuing brawl.

Immediately after the initial encounter, a fight broke out between Graham and Cauley. Graham gained the upper hand and backed Cauley up towards a fence. After Hilliard became involved, Cauley drew and fired his service revolver, striking Graham in the left thigh. Graham fell to the ground, drew his own gun, pointed it at Cauley, and pulled the trigger. The gun misfired, however, because Graham had failed to reload it after unloading it earlier that evening. Cauley ran behind a large dumpster and then jumped over a railing towards a building for more cover.

Meanwhile, appellee Sergeant David Davis, a thirteen-year MPD veteran also dressed in casual clothes, arrived at the scene with another officer in an unmarked car. Davis and his partner saw Cauley, whom they recognized as a police officer, fighting with an unknown individual. As Davis got out of the car, he thought he heard three or four gunshots, and also thought he saw his partner and Cauley fall wounded (both were taking cover). Davis drew his weapon, moved from behind a wall, and spotted Graham on the ground. According to Davis, Graham turned and pointed his gun in Davis' direction. One of the officers at the scene yelled to Davis that Graham was a police officer, but Davis did not hear him. Davis then shot Graham in the stomach and only afterwards learned that Graham was a police officer.

Graham's injuries were severe—Cauley's shot broke his leg, and Davis' caused damage that has required several operations to repair. He was absent from work for two and one-half years and now is able to work only limited duty. Cauley was treated for lacerations and bruises, missed approximately two months of work, and remained on limited duty for another six months.

On January 29, 1987, Graham filed a seven-count complaint in the U.S. District Court for the District of Columbia against Cauley, Davis, their superiors, and the District of Columbia alleging a variety of common law and constitutional claims. Graham alleged, *inter alia*, that Cauley's and Davis' use of excessive force and the Dis-

trict's negligent training, instruction, supervision, and control of MPD officers violated his Fourth, Fifth, and Sixth Amendment rights. Cauley counterclaimed against Graham for constitutional and common law violations. All of the constitutional claims were brought pursuant to 42 U.S.C. § 1983 (1982) ("section 1983"), which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

On May 11, 1987, the district court granted the District's motion to dismiss with prejudice the constitutional claim against the District on the grounds that "the District may not be held liable for constitutional violations that are not alleged to be directly caused by a custom, policy or practice of the District." *Graham v. District of Columbia*, Civ. Action No. 87–0218 ("Mem. Op.") at 4. The court also dismissed with prejudice the local law claims against the District. *Id.* at 2. As a result, the only claims remaining in Graham's case were that Cauley and Davis had violated his constitutional rights by using excessive force and that the two officers had committed an assault and battery against him. Also remaining was Cauley's counterclaim against Graham for constitutional violations and assault and battery.

A jury trial began on September 18, 1988. At the conclusion of the evidence, the court gave detailed instructions to the jury. First, treating Graham's and Cauley's constitutional claims as alleging the use of excessive force in an arrest or seizure, the court instructed the jurors to apply a substantive due process test in which they were to consider, among other factors, the amount of force used by each officer in relation to his need to use force, and whether either officer used excessive

force intentionally. *See Norris v. District of Columbia*, 737 F.2d 1148, 1150–51 (D.C. Cir.1984); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

The court also directed the jurors that if both Graham and Cauley had used excessive force against each other, neither could recover damages from the other on their constitutional claims, and provided the jurors with a special verdict form repeating this instruction. The court further instructed the jury that the "excessive force" determination should take into account whether the officers were defending themselves but stated that Cauley and Davis were only entitled to use deadly force if they reasonably believed that it was necessary under the circumstances to prevent Graham's use of deadly force.

On September 29, 1988, in a special verdict, the jury found that Sergeant Davis had not used excessive force against Graham, but that both Graham and Cauley had used excessive force against each other. Following the court's instructions, the jury concluded that Graham was not entitled to damages from either Davis or Cauley on his constitutional claims. The jury also found against Graham and Cauley on their respective common law claims of assault and battery.

Graham then brought this appeal. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## II. DISCUSSION

### A. Jury Instructions

Graham challenges two aspects of the district court's jury instructions. First, he argues that the court improperly instructed the jury that neither Graham nor Cauley could recover if it found that each officer had used excessive force against the other. Second, he assails the court's refusal to give certain instructions that he requested regarding Cauley's and Davis' use of the defense of self-defense. We address each of these issues in turn.

### 1. *Excessive force*

■ Confronted with the unique facts of this case, the court instructed the jury with respect to the constitutional claims brought by both Graham and Cauley as follows:

As to these claims of civil rights violation between Officer Graham on the one hand and Cauley on the other you're required to determine whether or not each officer used excessive force ... during the struggle.... Neither can recover against the other if each used excessive force on the other. If only one of the two officers used excessive force then your verdict must be for the other officer on this aspect of the case as to fault and he may recover for the resulting injuries thus proximately caused by the harm to himself.

Trial Transcript (Sept. 27, 1988) ("Tr.") at 107–08. Graham argues that this instruction was erroneous because it had the impermissible effect of cancelling out Graham's and Cauley's constitutional claims. Graham asserts that this result prejudiced him because his injuries were more severe.

Normally, if a plaintiff establishes by a preponderance of the evidence that a police officer used excessive force in carrying out an arrest or seizure, the plaintiff is entitled to damages under section 1983. *See, e.g., Clarke v. Ziedonis*, 513 F.2d 79, 80 n. 1 (7th Cir.1975). Thus, if these cases were considered separately, and juries found that Cauley had used excessive force in attempting to seize Graham, and that Graham had employed excessive force in attempting to subdue Cauley, each would be entitled to recover damages from the other. The question in this case is whether the competing constitutional claims should cancel each other out when the two cases are combined.

Recognizing the Supreme Court's admonition that section 1983 should be read in harmony with traditional tort defenses and immunities, *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976), Cauley offers two arguments in support of the district court's instruction. First, Cauley contends that the court's instruction merely reflects the proposition

that mutual combatants who voluntarily engage in an altercation may not recover damages from each other. In other words, because Graham allegedly *consented* to the fight with Cauley, he should not recover anything for injuries resulting from the fight.

Courts have split on whether consent to engage in mutual combat prohibits the participants from recovering from each other in intentional tort actions. *See generally Prosser & Keeton on Torts* § 18 (5th ed. 1984) (citing cases). We need not decide this issue, however, because we conclude that even if consent were a valid defense, it would not support the court's instruction that the constitutional claims cancel each other out. First of all, it is not clear that either Cauley or Graham, much less both of them, consented to the fight: because Cauley failed to plead the defense of consent in the district court, the jury was not asked to make any findings on this issue. Indeed, the evidence presented seems to indicate that neither officer consented, as both Graham and Cauley claim that they were attacked by the other party and reacted in self-defense. Therefore, the mutual combat doctrine may be inapposite on the facts of this case. *See Tatman v. Cordingly*, 672 P.2d 1286, 1289–90 (Wyo.1983) (no mutual combat without mutual consent); *Restatement (Second) of Torts* § 892A (1979).

Moreover, even if Graham had consented to the mutual combat, the defense of consent would not be available to Cauley if the jury found that the amount of force he used during the fight exceeded the scope of the consent, as its verdict that Cauley used excessive force may indicate. *See id.; see also Andrepont v. Naquin*, 345 So.2d 1216, 1219–20 (La.App.1977) (use of unnecessary and unanticipated force, such as the use of a handgun during a fistfight, vitiates the consent).

Second, Cauley argues that the district court's instruction is simply an application of the rule that a police officer may use reasonable force in protecting himself. What this argument fails to recognize is that the excessive force determination takes into account an officer's right to use

self-defense. Therefore, the jury's verdict that Cauley used excessive force belies his claim. In other words, under the due process test employed by the district court, the fact-finder must determine whether the police officer used an excessive amount of force *under the circumstances. See* Tr. at 106 (jury should consider the amount of force used in relation to the need to use force). The Fourth Amendment reasonableness test recently mandated by the Supreme Court for use in excessive force in arrest cases requires a similar inquiry. *See Graham v. Connor,* —— U.S. ——, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) (amount of force reasonable under the circumstances). Thus if Cauley were entitled to invoke self-defense, he was only entitled to use an amount of force that was reasonably required to protect himself. The jury's verdict that he used excessive force indicates that he crossed that line.

In sum, because we have found no support for the proposition that opposing excessive force claims cancel each other out, we must reverse the district court on this issue and remand for a new trial on Graham's claim that Cauley used excessive force in attempting to arrest or seize him. On remand, the district court should also reinstate Cauley's counterclaim that Graham used excessive force during the altercation. Although Cauley did not bring a cross-appeal, we find that it would be unfair to retry Graham's suit against Cauley without a similar retrial of Cauley's counterclaim. *See Arnold's Hofbrau, Inc. v. George Hyman Const. Co.,* 480 F.2d 1145, 1150 (D.C.Cir.1973) (lack of cross-appeal does not deprive court of jurisdiction to award non-appealing party a new trial). If a jury once again finds that both Cauley and Graham used excessive force during this fight, the jury should determine the amount of damage owing to each party, and the court should offset those amounts against each other.

Finally, we note that both Cauley and Davis moved for a directed verdict on qualified immunity grounds and also requested a jury instruction regarding the defense of qualified immunity. The district court ruled that qualified immunity did not apply

in this case. While Cauley does not raise this issue on appeal, he may be entitled to a defense of qualified immunity on remand. *See Graham v. Connor,* 109 S.Ct. at 1873 n. 12 (do not reach the question of whether qualified immunity is available in Fourth Amendment excessive force cases); *Thorsted v. Kelly,* 858 F.2d 571, 573–76 (9th Cir. 1988) (qualified immunity available in excessive force case).

### 2. *Self-defense*

■ Graham's constitutional claim against Davis and his assault and battery claims against both Cauley and Davis remain at issue. Graham argues that he is entitled to a new trial on these claims as well because of the district court's failure, despite Graham's request earlier in the trial, to give the jury two limiting instructions regarding Cauley's and Davis' reliance on the defense of self-defense: (1) that neither defendant could rely on self-defense to justify his actions if he initiated the situation that gave rise to the need to act in self-defense, and (2) that the use of self-defense must be viewed in the context of the actual necessity that existed at the time and that the amount of force used cannot exceed that which is reasonable in light of the necessity. We need not determine whether these instructions were required in this case, however, because Graham did not properly preserve this issue for appeal pursuant to Federal Rule of Civil Procedure 51, which states in relevant part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.... *No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.*

*Id.* (emphasis added).

In *Parker v. District of Columbia,* 850 F.2d 708 (D.C.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1339, 103 L.Ed.2d 809

(1989), we made clear that Rule 51 requires a specific objection to preserve an issue for appeal. In that case, the District, a defendant in a section 1983 action, requested that the trial court give a certain instruction to the jury. The court denied the request but commented that the District's request could constitute an interesting issue for appeal. When the District challenged the court's refusal to give the requested instruction in this court, we held that it had not preserved the issue for appeal: "The District failed to adhere to Rule 51; it neglected to state distinctly its specific objections to [the court's] charge before the jury retired to deliberate. Absent such specified objection, it would be overreaching for this court to reject the instructions and to upset the jury's verdict." 850 F.2d at 715.

In *Parker*, we distinguished *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), on which Graham relies. There the Supreme Court declined to dismiss a challenge to a jury verdict imposing municipal liability despite the petitioner's failure to preserve its objection to an underlying jury instruction. The Court found that because the petitioner's motions for a directed verdict and summary judgment raised the same issue as the one that would have been raised by an objection to the jury instruction, dismissal subsequent to the grant of certiorari would "undermine the policy of judicial efficiency that underlies Rule 51." *Id.* 108 S.Ct. at 922. In *Parker*, we found, as we do here, that those considerations mandated a different conclusion: "By contrast [with *Praprotnik*], policies of judicial efficiency and finality of judgments require us, at this relatively early stage of the appellate review process, to adhere to the clear directives of Rule 51." 850 F.2d at 716.

In this case, after the district court instructed the jury and immediately before the jury retired to deliberate, the court conferred with counsel for all the parties at the bench. At that time, Graham's counsel neither requested that the jury be given the self-defense instructions nor objected to the court's failure to give them, although he objected to other aspects of the court's

jury instructions. *See* Tr. at 120 (Graham's counsel objecting to the court's instruction that mere mistake is not a deprivation of constitutional rights). Because he did not make a specific objection to the court's failure to give the requested instructions, he did not preserve the issue for appeal.

Graham attempts to circumvent Rule 51 by noting that earlier in the trial he submitted a number of requested jury instructions and supporting legal authority, including one regarding Cauley's and Davis' reliance on the defense of self-defense. Graham argues that because he submitted these instructions in response to the court's request, and because the court indicated that it would like to have the matter of the instructions settled before the defense rested, this submission was adequate to preserve his objection.

We are unmoved by this argument. Graham's proposed instructions and supporting authority could not embody his objections to the district court's jury instructions for the simple reason that the court had not yet instructed the jury. Moreover, if the court had intended that these submissions qualify as the parties' final objections to the instructions, there would have been no need for it to ask, after the jury had been instructed, if counsel had any problems with the instructions.

Rule 51 as construed in *Parker* serves an important objective—the preservation of scarce judicial resources. Requiring counsel to state specifically his objections to the court's instructions immediately before the jury retires to deliberate enables the district court to cure any errors it may have made in the instructions. Otherwise, an error that the district court could easily correct on the spot might form the basis for an appeal, reversal, and retrial.

### B. Municipal Liability

Count VII of Officer Graham's complaint was brought under section 1983. It alleged:

As a result of *negligent* training, instruction, supervision and control of defendant District of Columbia as alleged

herein ... and of the *vicarious liability* of defendant District of Columbia, through the acts of employees, agents or servants during the course of their employment by the District of Columbia as alleged herein ... plaintiff has been deprived of the rights, privileges and immunities secured to him by the Constitution of the United States.

(Emphasis added). Upon the District's motion, the trial court dismissed this count of the complaint *with prejudice,* stating that "the District may not be held liable for constitutional violations that are not alleged to be directly caused by a custom, policy or practice of the District." Mem. Op. at 4. While Graham argues that the court improperly required him to allege a specific policy or practice of the District, we need not address that claim because we find that his complaint was deficient in another way—he failed to allege that the District's policymakers had exhibited "deliberate indifference" to persons with whom Metropolitan Police Department officers would come into contact.

In *City of Canton v. Harris,* — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court examined whether a constitutionally valid policy of a municipality that was unconstitutionally applied could be the basis for municipal liability if the employee was inadequately trained. The Court held that a municipality's failure to train "may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *Id.* 109 S.Ct. at 1204 (emphasis added). *See also Parker,* 850 F.2d at 712.

In this case, Graham's complaint alleged only that the District negligently trained MPD officers and was vicariously liable for the acts of Cauley and Davis. Because neither negligence nor vicarious liability imputes deliberate indifference, and because Graham did not allege that the District's failure to train amounted to deliberate indifference, his complaint failed to state a claim and was properly dismissed.

Graham contends, however, that the "deliberate indifference" standard, as set out in *Parker* and *City of Canton,* was not enunciated until long after his complaint in this case was filed and dismissed by the district court. We find this chronology irrelevant, however, because we must apply presently controlling law. *See Tully v. Mobil Oil Corp.,* 455 U.S. 245, 247, 102 S.Ct. 1047, 1049, 71 L.Ed.2d 120 (1982) ("The normal rule in a civil case is that we judge it in accordance with the law as it exists at the time of our decision."). Moreover, Graham's complaint is also deficient under the case law at the time it was filed. The Supreme Court made clear, in *Monell v. New York Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), that a municipality cannot be held liable on a respondeat superior or vicarious liability theory. In *Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n. 7, 105 S.Ct. 2427, 2436 n. 7, 85 L.Ed.2d 791 (1985), the Court, by leaving open the question whether "gross negligence" or a more conscious decision is required to establish municipal liability under section 1983, indicated that a negligent training policy was not actionable. Even under the law at the time the complaint was filed, or dismissed, neither mere negligence nor vicarious liability could establish municipal liability. Thus Count VII of Graham's complaint was properly dismissed with prejudice.

### III. CONCLUSION

Because the district court erroneously instructed the jury that neither Graham nor Cauley could recover on their respective constitutional claims if both used excessive force, we reverse and remand for a new trial on these claims alone. We affirm the district court's judgments in all other respects.

*So ordered.*