# In re the DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

## M.D.L. No. 378.

United States District Court,
D. Kansas.

Sept. 10, 1990.

See also 746 F.Supp. 1452.

Joseph W. Kennedy of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., for Exxon and ARCO.

Emmett Lewis, Washington, D.C., co-counsel for Exxon.

Sam Perkins, Washington, D.C., co-counsel for ARCO.

Ellen Toll, Asst. Atty. Gen., State of Alaska, Anchorage, Alaska, James F. Flug of Lobel, Novins, Lamont & Flug, Washington, D.C., for State of Alaska.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motions of Exxon Corporation and Atlantic Richfield Corporation to enforce the State of Alaska's obligations under the settlement agreement (Doc. 1645, 1652); the State of Alaska's motion to dismiss (Doc. 1733); Alaska's two motions for protective order (Doc. 1735, 1784). The court held oral argument on May 30, 1990.

Exxon Corporation (Exxon) and Atlantic Richfield Corporation (ARCO) have filed separate motions to enforce Alaska's obligations under the Final Settlement Agreement. The motions seek similar relief and the matters were argued together. The court will address Exxon and ARCO's arguments together for the most part. Alaska has filed a single responsive pleading in the form of a motion to dismiss and opposition to Exxon's and ARCO's motions.

Exxon and ARCO argue that the State of Alaska has breached its obligations as a party to the Final Settlement Agreement (FSA) through its interpretation of its tax laws, which, according to Exxon and ARCO, will deprive them of an important benefit conferred on them as refiners of Alaska North Slope crude oil under the Entitlements Program. Specifically, Alaska has brought claims under its oil and gas corporate income tax, asserting that entitlements benefits the parties received as refiners of Alaska North Slope crude constituted wellhead production income. Exxon and ARCO argue that by attempting to tax an amount in excess of the DOE ceiling price as crude oil production income, the State is seeking to recover amounts related to the Entitlements Program.

Exxon seeks an order declaring that Alaska has breached its obligations as a party to the FSA and enjoining the State from taking any action inconsistent with the agreement. Doc. 1645, at p. 3. ARCO seeks from this court a declaration that Alaska has breached the FSA and an injunction against Alaska's further prosecution of the tax claim. Doc. 1652, at p. 3–4.

Alaska seeks dismissal of the motions for lack of subject matter jurisdiction. Alaska argues that these motions seek to have the court enjoin the collection of a state tax. Alaska argues that the tax being levied has no relationship to this case; that the FSA contains no broad waiver or release of state taxing authority; that the entitlements section of the FSA involved only the DOE and the refiners; that a number of jurisdictional barriers exist, i.e., the Tax Injunction Act, comity, federalism, the Eleventh Amendment, and exhaustion of state remedies; and that the court should abstain from hearing these motions even if the court has jurisdiction.

Exxon's motion discusses the Entitlements Program at some length. The court will summarize the program here. The Entitlements Program entailed a system of monthly cash transfer payments from refiners with relatively greater access to

price-controlled crude oil to those with less or no access to such crude oil. If a refiner ran more than its share of price controlled crude oil during the month, it was required to purchase additional entitlements. A refiner that ran less than its proportionate share of price controlled crude oil was required to sell extra entitlements.

The Entitlements Program had a two month lag between a refiner's processing of oil and the DOE's publication of an entitlements notice based on that processing. The two month lag became an issue for litigation following price decontrol. Because of the two month delay, the final two entitlements notices had not been published when the decontrol order was issued. Certain refiners that expected to be entitlements buyers sought to enjoin DOE from taking any further Entitlements Program action. When DOE decided not to issue the final entitlements notices, refiners that would have been entitlements sellers challenged DOE. The Final Settlement Agreement reached in this case settled these matters. Potential entitlements buyers were relieved of purchase obligations, and potential entitlements sellers received the majority of the funds distributed to refiners under the FSA. DOE agreed to refrain from imposing any further entitlements obligations and agreed to fund grants of entitlements exception relief. *See* FSA Part V.

The court now turns to the situation leading up to the present dispute. Upon the completion of the Trans–Alaska Pipeline in 1977, the crude oil produced from the Alaska North Slope would have been subject to the upper tier ceiling price and would have borne the corresponding entitlements burden, i.e., a partial entitlement for upper tier crude. To make the Alaskan crude more competitive, the DOE removed the entitlements burden which would otherwise have attached to refiner purchases of Alaska North Slope crude oil. Refiners of Alaska crude therefore were not required to have a partial entitlement for each barrel of crude they acquired.

Under its oil and gas corporate income tax, Alaska Stat. § 43.21.010 *et seq.* (repealed 1982), Alaska has issued deficiency notices to Exxon and ARCO for production income for the months of July 1979 through April 1980. According to Alaska, Exxon and ARCO received a taxable windfall in association with Alaska North Slope crude production since that crude bore no entitlement burden. Alaska asserts that DOE's special entitlements treatment of Alaska North Slope crude benefitted Exxon and ARCO by eliminating the need to make additional entitlements purchases from other refiners.

The Alaska tax is designed to isolate and tax that portion of the value of a barrel of crude oil attributable to the oil being produced. *Atlantic Richfield Co. v. State*, 705 P.2d 418, 421 (Alaska 1985) (finding oil and gas corporate income tax constitutional), *appeal dismissed*, 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986). The Alaska oil and gas corporate income tax is applied to the corporation's net income, defined as gross income from oil and gas production less certain deductions for royalties, taxes, costs, depreciation, and so on. Alaska Stat. § 43.21.020(a), (c). Gross income from oil and gas production is defined as the gross value at the point of production. *Id.* § 43.21.020(b). Regulations define gross value as the sales price of the crude oil produced. Alaska Admin.Code tit. 15, § 12.120(a). In the third party sales context, sales price is defined as the actual proceeds received. *Id.* § 12.120(b)(1). The present cases do not involve third party sales. They involve crude transferred between production and refining divisions of larger corporate entities. In this context, the regulations define sales price as the total acquisition cost for imported oil of similar quality. *Id.* § 12.120(b)(2). For the tax claims in question here, Alaska added the imputed value of the removed entitlements burden to the wellhead price to determine gross value at the point of production. For the tax periods in question, when the value of the removed entitlements burden is added to the wellhead price, the resulting total exceed the DOE ceiling price applicable to that crude oil. Exxon asserts that this violates an Alaska tax regulation which limits the gross value at the point of production to the DOE ceiling price. *See* Alaska Admin.Code tit. 15, § 12.120(a)

("... in no event may the value at the point of production exceed the ceiling price (if any) that is applicable to that oil or gas under a mandatory price control program.").

According to Alaska, by 1979, when the wellhead price of Alaska crude reached the upper tier ceiling price, that crude oil became uniquely valuable to an integrated producer/refiner such as Exxon and ARCO. The price was constrained by the ceiling, but it could be refined without incurring any entitlements obligations. The Alaska crude had the benefit of ceiling prices, without the corresponding obligation of entitlements. When a producer sold the Alaska crude to a third party refiner, that third party refiner gained that portion of the production value above the ceiling price. When a producer internally transferred that crude to a refiner that was part of the same company, the production income shifted from one portion of the company to another. This internal shift in production income is the focus of the tax and the cause of the present dispute.

### 1. Alaska's Motion to Dismiss

As discussed below, the court concludes that it lacks subject matter jurisdiction on several bases. In the alternative, if this court does have jurisdiction, the court would abstain from deciding the matters presented.

#### a. Tax Injunction Act

Alaska argues that the Exxon and ARCO motions are barred by the Tax Injunction Act. That statute provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. This statute was intended to limit drastically federal court jurisdiction to interfere with the collection of taxes. *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 1233–34, 67 L.Ed.2d 464 (1981). The form of the action or the requested relief is not determinative—the court must look at the practical effect of the action. *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 111, 102 S.Ct. 177, 183–84, 70 L.Ed.2d 271 (1981). The Tax Injunction Act applies to claims seeking declaratory judgments, injunctive relief, and refunds of taxes paid. *Brooks v. Nance,* 801 F.2d 1237, 1239 (10th Cir.1986); *Cities Service Gas Co. v. Oklahoma Tax Commission,* 656 F.2d 584, 586 (10th Cir.), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981).

Under Alaska's tax procedures, a taxpayer receiving an assessment may request an informal conference or a formal hearing. Alaska Stat. § 43.05.240(a)–(b). Upon waiver of informal conference, or receipt of an informal conference decision, a taxpayer may appeal the assessment to the Commissioner of Revenue and request a formal hearing. *Id.* § 43.05.240(b). After the hearing, in which witnesses may be subpoenaed and evidence presented, the Department of Revenue issues a formal hearing decision. *Id.* § 43.05.240(c). The taxpayer may appeal any issues to the Alaska Superior Court, *id.* § 43.05.240(d), and then to the Alaska Supreme Court. *Id.* § 22.05.010(c). As the final step, the taxpayer may petition the United States Supreme Court for review. ARCO has proceeded through its administrative hearing before the Alaska Department of Revenue. The Commissioner of Revenue has issued its final decision in favor of the Department of Revenue. At the time of the hearing, ARCO was at the superior court review stage, having filed an appeal in the superior court on October 2, 1989. Exxon was at the informal conference stage at the time of the briefing of these matters. Alaska argues that these procedures provide a plain, speedy, and efficient remedy, thus barring this action in federal court.

The "plain, speedy and efficient remedy" language of the Tax Injunction Act requires a state court remedy that meets certain minimal procedural requirements. *California v. Grace Brethren Church,* 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982); *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 512, 522, 101 S.Ct. 1221, 1228–29, 1233–34, 67

L.Ed.2d 464 (1981). The state remedy must provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any and all constitutional objections to the tax. *Grace Brethren*, 457 U.S. at 411, 102 S.Ct. at 2509; *Rosewell*, 450 U.S. at 514, 515 n. 19, 101 S.Ct. at 1229–30, 1230 n. 19. Final review of the substantive federal claims may be obtained in the United States Supreme Court. *See Rosewell*, 450 U.S. at 515 n. 19, 101 S.Ct. at 1230 n. 19. The likelihood of the taxpayer's success in the state court is not a factor to be considered when determining whether the jurisdictional prohibition of the Tax Injunction Act applies, since the Act requires only a procedural, as opposed to a substantive, remedy in state court. *See Cities Service*, 656 F.2d at 586–87 (discussing *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)).

The Tenth Circuit has held that the State of Oklahoma's tax procedures satisfy the procedural requirements for a plain, speedy, and efficient remedy. *See Brooks v. Nance*, 801 F.2d 1237, 1240 (10th Cir. 1986); *Cities Service Gas Co. v. Oklahoma Tax Commission*, 656 F.2d 584, 587 (10th Cir.), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981). Oklahoma procedures provide the taxpayer with the right to a full hearing before the Oklahoma Tax Commission in which all arguments may be presented. The taxpayer has the option of appealing directly from the Tax Commission to the Oklahoma Supreme Court, or paying the tax and bringing suit in state district court for recovery of taxes paid. These procedures meet the requirements that the state remedy provide the opportunity for a full hearing and judicial determination of the taxpayer's claim. *See Brooks*, 801 F.2d at 1240; *Cities Service*, 656 F.2d at 587.

■ Alaska law provides for an optional informal conference, a formal hearing with the Department of Revenue, an appeal of the final hearing decision to the superior court, and an appeal of right to the Alaska Supreme Court. As the final step, the taxpayer has the right to petition the United States Supreme Court for a writ of certiorari. These procedures are quite similar to the Oklahoma procedures which the Tenth Circuit has held provide a plain, speedy, and efficient remedy. *See Brooks v. Nance*, 801 F.2d 1237, 1240 (10th Cir.1986); *Cities Service Gas Co. v. Oklahoma Tax Commission*, 656 F.2d 584, 587 (10th Cir.), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981). The court concludes that the Alaska tax procedures provide a plain, speedy, and efficient remedy. Exxon's and ARCO's motions are barred by the Tax Injunction Act.

b. Economic Stabilization Act

■ Exxon and ARCO argue that this court has exclusive subject matter jurisdiction under section 209 of the Economic Stabilization Act, 12 U.S.C. § 1904 note. According to Exxon and ARCO, an action seeking interpretation of the FSA is a cause of action arising under the Economic Stabilization Act. ARCO also argues that section 211 of the Economic Stabilization Act precludes a state law remedy.

Section 209 of the Economic Stabilization Act provides:

> Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices . . . .

12 U.S.C. § 1904 note. Section 209 created the government enforcement action. Section 211 is the jurisdictional grant:

> The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection . . . affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken

by any agency under this title) raised in any proceeding before such court.

*Id.*

Alaska argues that these actions do not arise under the Economic Stabilization Act and therefore do not fall within the exclusive jurisdiction of the federal court. The court agrees. The dispute between Exxon, ARCO, and Alaska is not a government enforcement action under section 209, nor is it a private action for damages under section 210. Assuming that the action does arise under the Economic Stabilization Act, it is raised by way of defense to the state tax action and pursuant to section 211 does not lie within the exclusive jurisdiction of the federal courts. Exxon and ARCO have brought declaratory judgment actions, seeking a declaration that the state tax is barred by the FSA in order to defend against the assessment of that tax in Alaska. The only potential Economic Stabilization Act issue is whether the state tax is preempted. The taxpayer can make this argument in state court. According to the briefs filed in this matter, ARCO has raised the preemption issue in the state proceedings. If any issue governed by the Economic Stabilization Act is raised, it is (or should be) raised as a defense to the state tax action. This court does not have exclusive jurisdiction under the Economic Stabilization Act.

c. Final Settlement Agreement

██ Both Exxon and ARCO argue that this court has jurisdiction under the Final Settlement Agreement. Exxon and ARCO argue that Alaska's tax violates the FSA. Both argue that the FSA was intended to resolve all controversies surrounding the Entitlements Program. Neither Exxon nor ARCO, however, has identified any specific provision in the FSA controlling their dispute with Alaska. Exxon argues that Alaska is under an implied obligation to act consistently with the purposes and policies contained in the FSA and to refrain from activities which would injure the right of another party to receive the benefits due it under the FSA. ARCO argues that Alaska's tax violates the FSA because it attacks Entitlements Program benefits confirmed by the agreement.

Paragraph VI.B of the FSA provides:

The Parties to this Agreement shall support approval of all of its provisions, shall take all steps and make all filings necessary to its implementation at their own expense or from their respective Escrow funds. DOE will undertake the defense of the Agreement in response to any litigation, in which DOE is named as a party, challenging this Agreement or any action required to be taken by DOE pursuant thereto. However, DOE's agreement to this provision does not circumscribe the discretion of the Attorney General to authorize or preclude the filing of particular pleadings or the making of arguments by DOE in any litigation, and this Agreement shall not create any right of action against DOE concerning the initiation, continuation or conduct of any litigation. All Parties agree to cooperate (1) in defending this Agreement and (2) in any action required to be taken pursuant thereto in any litigation challenging its validity. All Parties also agree that they will fully support the procedures and policies set forth herein in all present and future proceedings involving Alleged Crude Oil Violations and, to the extent any counsel approving the form and content of the Agreement by signature hereon enters an appearance in any such proceeding, counsel will not oppose or do anything inconsistent with such policies and procedures, the terms of this Agreement or any orders pursuant thereto. Any Party may enforce this Agreement against any other Party but this Agreement confers no such enforcement right upon any non-Party hereto.

FSA ¶ VI.B. Alaska is a party to the Final Settlement Agreement. The quoted provision is not, however, an unequivocal expression by Alaska of consent to be sued regarding a state tax matter in federal court in general or in this court in particular.

Paragraph II.A.1 of the Final Settlement Agreement provides in pertinent part:

A Party who is not otherwise a party to M.D.L. 378 shall not become or be considered a party to M.D.L. 378 by reason of having executed this Agreement nor shall execution hereof be probative of making any Party a party to M.D.L. 378, although all Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court approving and enforcing the Agreement. FSA ¶ II.A.1. Alaska did not become a party to this multidistrict litigation by executing the Final Settlement Agreement and receiving benefits from it.

Both Exxon and ARCO argue that jurisdiction arises under the Final Settlement Agreement. The Temporary Emergency Court of Appeals has held that this court has jurisdiction to decide a motion to enforce the Final Settlement Agreement. *In re the Department of Energy Stripper Well Exemption Litigation,* 864 F.2d 796, 800 (Temp.Emer.Ct.App.1988). Nothing in the FSA constitutes a waiver of a state's taxing power or gives this court the power to hear state tax cases. Nothing in the FSA expressly waives the states' taxing powers. The court will not hold that Alaska has waived its taxing powers by implication.

The court has previously held in the Mobil–Oklahoma context (739 F.Supp. 1449 (D.Kan.1990)) that there is nothing in the FSA to enforce against the State. There is nothing in the FSA to enforce against Alaska, either. Consequently, the court does not have jurisdiction under the FSA.

d. Eleventh Amendment, comity, failure to exhaust

■■■ The court additionally holds that the Eleventh Amendment is a bar to this action. The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court has consistently held that this amendment bars not only suits brought in federal court by citizens of other states, but also suits brought by the state's own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). In the absence of consent, a suit in which a state or one of its agencies or departments is named as defendant is barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). The Eleventh Amendment defense may be raised at any time. *Id.* at 99 n. 8, 104 S.Ct. at 907 n. 8; *Edelman,* 415 U.S. at 678, 94 S.Ct. at 1363.

■■■ Exxon and ARCO argue that Alaska has waived its Eleventh Amendment immunity. A state may waive its immunity and consent to suit in federal court. The state's consent must, however, be unequivocally expressed. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. As the Supreme Court stated in *Edelman,* a waiver of Eleventh Amendment immunity will be found only when stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1361 (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

Waiver of a State's Eleventh Amendment immunity must be clearly expressed. Paragraph II.A.1 of the FSA (quoted above) reflects that when the states became signatories to the Final Settlement Agreement, they did not waive their Eleventh Amendment immunity from suit. This court has previously held that the FSA is not a waiver of a state's Eleventh Amendment immunity. 739 F.Supp. at 1454 (order granting Oklahoma's motion to dismiss).

■■■ The doctrine of comity is an additional bar to Exxon's and ARCO's claims against Alaska. The doctrine of comity bars damage actions challenging the validity of state tax systems in federal court. Taxpayers must seek protection of their federal rights by state remedies, provided those remedies are plain, adequate, and complete. The taxpayer may ultimately seek review of the state decision in the

United States Supreme Court. *Fair Assessment in Real Estate Association, Inc. v. McNary,* 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981). The doctrine of comity provides a basis for reaching the same conclusion as the Tax Injunction Act—that the court lacks subject matter jurisdiction. *Brooks v. Nance,* 801 F.2d 1237, 1340–41 (10th Cir.1986).

Given this resolution of these issues, the court does not address Alaska's arguments concerning Exxon and ARCO's failure to exhaust state remedies.

### e. Abstention

 Finally, Alaska argues the court should abstain if it finds it has jurisdiction. The court agrees that abstention would be appropriate in this case.

> [A]bstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, or *collection of state taxes,* ...

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816, 96 S.Ct. 1236, 1245–46, 47 L.Ed.2d 483 (1976) (emphasis added; citations and footnote omitted).

### 2. Motions for Protective Order

Alaska's first motion for protective order seeks to stay the interrogatories and requests for production made by Exxon and ARCO, pending determination of whether the court has jurisdiction. Alaska's second motion for protective order seeks to stay all discovery of any kind pending this court's ruling on Alaska's motion to dismiss. Given the court's resolution of the jurisdictional issues, the motions for protective order will be denied as moot.

### 3. Conclusion

The Final Settlement Agreement is completely silent on state taxes. The FSA does *not* provide that the refiners' entitlements benefits were to be protected from any and all attacks by other parties, including the states. The FSA required the dismissal of all litigation against DOE involving Entitlements Program issues provided that "no further litigation *against DOE* involving any aspect of the Entitlements Program either past or future shall be instituted in any State or Federal court or agency of the United States Government." FSA ¶ V.E. (emphasis added).

The motions are barred by the Tax Injunction Act, since the parties have adequate state law remedies available. There is an adequate remedy in the state court system, i.e., through the administrative level, followed by appeals to the Alaska Superior Court and the Alaska Supreme Court, and appeal to the United States Supreme Court. The remedy here may be procedurally shorter but the end result is the same, i.e., from this court, to the Temporary Emergency Court of Appeals, to the United States Supreme Court. Both the Tax Injunction Act and the Eleventh Amendment bar this action. The court would abstain even if it had jurisdiction, since the court should not involve itself in state tax matters.

As a final note, the court would state that it sees no sinister motives on part of Alaska for its "delay" in bringing these tax claims until after the Final Settlement Agreement was executed. The oil tax was under challenge by oil producers—including ARCO and Exxon—until March 3, 1986. *See Atlantic Richfield Co. v. State,* 705 P.2d 418 (Alaska 1985), *appeal dismissed,* 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754; *reh'g denied,* 475 U.S. 1062, 106 S.Ct. 1291, 89 L.Ed.2d 597 (1986).

IT IS BY THE COURT THEREFORE ORDERED that the State of Alaska's motion to dismiss (Doc. 1733) is hereby granted. The motions to enforce filed by Exxon (Doc. 1645) and ARCO (Doc. 1652) are hereby dismissed.

IT IS FURTHER ORDERED that the State of Alaska's two motions for protective order (Doc. 1735, 1784) are denied as moot.