In re DEPARTMENT OF ENERGY
STRIPPER WELL EXEMPTION
LITIGATION.

ATLANTIC RICHFIELD COMPANY
AND EXXON CORPORATION

v.

STATE OF ALASKA and U.S.
Department of Energy.

No. 10–85.

Temporary Emergency Court of Appeals.

Argued April 17, 1991.

Decided Aug. 26, 1991.

Judgment Entered Sept. 4, 1991.

Joseph W. Kennedy and Gerald N. Capps, Morris, Laing, Evans, Brock and Kennedy, Wichita, Kansas, Edward de la Garza and Tom O. Foster, Exxon Co., U.S.A., Houston, Tex., Donald B. Craven, Emmett B. Lewis, Robert K. Huffman and Kathryn Bucher, Miller and Chevalier, Washington, D.C., F. Steven Mahoney and Peter J. Turner, ARCO Alaska, Inc., Anchorage, Alaska, Robert E. Jordan, III, Samuel T. Perkins and Alfred M. Mamlet, Steptoe and Johnson, Washington, D.C., were on the brief, for appellants.

Ellen Toll, Asst. Atty. Gen. and Charles E. Cole, Atty. Gen., State of Alaska, Anchorage, Alaska, James F. Flug, Lobel, Novins, Lamont and Flug, Washington, D.C., and John R. Messenger, Preston, Thorgrimson, Shidler, Gates and Ellis, Anchorage, Alaska, were on the brief, for appellee State of Alaska.

Before GRANT, METZNER and PECK, Judges.

GRANT, Judge.

Appellants Exxon Corporation [Exxon] and Atlantic Richfield Co. [ARCO] appeal from the district court's dismissal, for lack of subject matter jurisdiction, of their motion to enforce the obligations of appellee the State of Alaska under the Final Settlement Agreement [FSA or Agreement]. The oil companies contend that the district court had subject matter jurisdiction to consider FSA violations and should have issued both declaratory and injunctive relief. The State of Alaska seeks affirmance of the judgment below, reasserting its argument that the district court lacked jurisdiction over the action. For the reasons presented below, we affirm the dismissal with respect to those issues within our exclusive jurisdiction, and decline to rule on those over which our jurisdiction does not extend.

## I. FACTS

Both appellant corporations and the State of Alaska are parties to the Final Settlement Agreement in *Stripper Well* M.D.L. 378. In June 1989, in the United States District Court for the District of Kansas, Exxon and ARCO challenged Alaska's tax assessment on the entitlements benefits they received as refiners of Alaska North Slope crude oil under the Entitlements Program. They alleged that Alaska had breached its obligations under the FSA by taxing them on both the Department of Energy [DOE] ceiling price and the added value of the entitlements benefits, the sum of which created an imputed wellhead value substantially in excess of the federally mandated price. As relief they sought both a declaration of Alaska's breach of the Agreement and an injunction against Alaska's further prosecution of the tax claim or

any action inconsistent with the Agreement.[1]

On September 9, 1990, the district court granted Alaska's motion to dismiss, holding that it did not have jurisdiction under the Agreement or the Economic Stabilization Act, and that, in any case, it was a state tax matter to be settled in state court. It specifically found that the motions of Exxon and ARCO were barred by the Tax Injunction Act, the eleventh amendment, and principles of comity. *In re Department of Energy Stripper Well Litigation,* 746 F.Supp. 1462, 1470 (D.Kan.1990). On appeal the oil companies claim that the court wrongly focused on express waiver rather than implied contractual obligation, and this error requires reversal. Appellants have filed concurrent appeals in this court and in the United States Court of Appeals for the Tenth Circuit. On November 16, 1990, the Tenth Circuit stayed its proceedings pending the resolution of this appeal.

## II. APPELLATE JURISDICTION

In the 1971 amendments to the Economic Stabilization Act [ESA] Congress created the Temporary Emergency Court of Appeals [TECA] and vested it with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." 12 U.S.C. § 1904 note, § 211(b)(2) (incorporated in section 5(a)(1) of the Emergency Petroleum Allocation Act [EPAA], 15 U.S.C. § 754(a)(1)).

■ This judicial-review provision, "designed to provide speedy resolution" of cases brought under the ESA and the EPAA, *Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 308, 46 L.Ed.2d 215 (1975), has led to frequent reassessment of the extent of TECA's jurisdictional grant.[2] Under § 211 TECA's appellate jurisdiction is narrowly limited to the determination of issues "arising under" the ESA, the EPAA and their corresponding regulations. *United States Department of Energy v. Brimmer,* 776 F.2d 1554, 1556 (TECA 1985), *cert. denied sub nom. Inexco Oil Co. v. United States Department of Energy,* 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986) (citing *MGPC, Inc. v. Department of Energy,* 673 F.2d 1277, 1280 (TECA 1982)). An issue "arising under" those acts is one which involves the construction, applicability or effect of the acts or regulations. *Isla Petroleum Corp. v. Puerto Rico Department of Consumer Affairs,* 811 F.2d 1511, 1513 (TECA 1986), *rev'd on other grounds,* 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988). The two principal inquiries to be made in TECA's jurisdictional determination are:

whether resolution of the litigation requires the application or interpretation of the EPAA or its regulations and whether any EPAA issue presented to this Court has been adjudicated in the court below.

*Pennzoil Exploration and Production Co. v. Lujan,* 928 F.2d 1139, 1141 (TECA 1991) (citations omitted). Moreover, we must consider "the nature of the issue that is presented to us and not the nature of the case or controversy presented below." *MGPC,* 673 F.2d at 1281, *quoted in Placid Oil Co. v. Ashland Oil, Inc.,* 792 F.2d 1127, 1132 (TECA 1986).

■ When some issues fall within TECA's exclusive jurisdiction and others do not, there arises the possibility of dual appellate review or bifurcated appeals from unitary judgments. *RJG Cab, Inc. v. Hodel,* 797 F.2d 111, 117 (3rd Cir.1986); *Atlantic Richfield Corp. v. Department of Energy,* 769 F.2d 771, 778 (D.C.Cir.1984).

---

1. Because our decision is based solely on jurisdictional issues, we need not pursue further the background underlying the merits of this case. A clear and succinct presentation of the facts herein, the entitlements program, and the Alaska tax at issue are set forth in the opinion of the district court. *In re Department of Energy Stripper Well Litigation,* 746 F.Supp. 1462 (D.Kan. 1990).

2. As Judge Hoffman stated in his dissenting opinion in *Texaco, Inc. v. Department of Energy,* 616 F.2d 1193 (TECA 1979), *rev'd,* 663 F.2d 158 (1980), "We must wonder as to the wisdom and necessity of creating a special court such as TECA. Approximately thirty percent of TECA's cases are decided upon jurisdictional grounds." *Id.* at 1199.

In these circumstances we exercise our jurisdiction narrowly, declining those issues not arising under the ESA and EPAA. In *Pennzoil* we enumerated possible exceptional circumstances to this limitation:

> (1) a meaningful ruling requires consideration of the issues as a whole, (2) the construction of the EPAA will control the litigation, (3) the issues are so commingled as to render separate treatment impractical, or (4) non-EPAA issues are subsidiary, preliminary or threshold to an EPAA issue. When discrete EPAA and non-EPAA issues otherwise are involved on appeal, review must be bifurcated between the TECA and the United States Court of Appeals.

*Pennzoil Exploration*, 928 F.2d at 1141–42 (numerals added, citations omitted). *See, e.g., Petroleum Products Antitrust Litigation*, 830 F.2d 198 (TECA), *cert. denied sub nom. City of Long Beach v. Exxon Corp.*, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987) (determination of antitrust damages issue within exclusive jurisdiction of Ninth Circuit; TECA dismisses case).

Such a situation, with appeals filed both in this court and in the Tenth Circuit, is presented herein. We note, as well, that ARCO and Exxon have filed state administrative challenges to the assessment of this tax in Alaska. ARCO has appealed the Alaska Department of Revenue's upholding of the tax in the Superior Court in Anchorage.

■ In spite of the narrowness of its special and exclusive jurisdictional range, within the jurisdictional confines of the ESA and EPAA, this court has been granted full powers of a circuit court of appeals under ESA § 211(b)(1). *Tully v. Mobil Oil Corp.*, 455 U.S. 245, 247 n. 1, 102 S.Ct. 1047, 1049 n. 1, 71 L.Ed.2d 120 (1982) (per curiam); *Navajo Refining Co. v. Department of Energy*, 750 F.2d 966, 968 (TECA

1984). Included in those powers is TECA's ability to consider its own jurisdiction.

It is a fundamental principle that a court created under Article III of the United States Constitution always has the necessary jurisdiction to determine whether it has jurisdiction over the parties to and the subject matter of a case or controversy.

*Petroleum Products Antitrust Litigation,* 830 F.2d at 202 (citing *United States v. United Mine Workers of America,* 330 U.S. 258, 290–92, 67 S.Ct. 677, 694–95, 91 L.Ed. 884, 910–12 (1947)). If its jurisdiction is lacking, TECA will dismiss an appeal. *City of Long Beach v. Department of Energy,* 754 F.2d 379, 394 (TECA 1985).

■ TECA has long recognized its jurisdiction to review district court dismissals of an action for lack of jurisdiction. *See, e.g., TransAmerican Natural Gas Corp. v. U.S. Department of Interior,* 816 F.2d 689 (TECA), *cert. denied,* 484 U.S. 871, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987); *Placid Oil Co. v. Ashland Oil, Inc.,* 792 F.2d 1127 (TECA 1986); *United States v. Hollingsworth Oil Co.,* 760 F.2d 1295 (TECA 1985). It is clearly within our jurisdictional purview to reconsider the district court's rulings that the FSA was not breached and that the "exclusive jurisdiction" provision of the ESA was not applicable to the issues raised by Exxon and ARCO.

■ However, the question of the applicability of the Tax Injunction Act, an issue that has been treated as independent and severable from the ESA-based claims, does not fall within our jurisdiction. *See Mobil Oil Corp. v. Tully,* 639 F.2d 912, 916–17 (2d Cir.), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *Mobil Oil Corp. v. Dubno,* 639 F.2d 919, 921 (2d Cir), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3122, 69 L.Ed.2d 980 (1981).[3] Consequently, we decline to consider that issue.

---

**3.** The Second Circuit Court of Appeals has suggested that "TECA's disposition of the EPAA claim might eliminate the need to consider the Tax Injunction Act issue." *Scallop Corp. v. Tully,* 705 F.2d 645, 650 n. 9 (2nd Cir.1983). In such a case the issue need not be severed; it could be considered by TECA in order to "avoid the waste, delay, and procedural ball-bouncing between appellate courts that may occur if TECA, which is not bound by our views, declines in whole or in part to assume jurisdiction over the appeal stayed by it." *Id.* at 650–51 (Mansfield, J., concurring).

### III. DISTRICT COURT'S SUBJECT MATTER JURISDICTION

■ Exxon and ARCO brought their motions to the Kansas district court that had supervised and approved the Final Settlement Agreement in M.D.L. 378, seeking enforcement of that Agreement. Approval of the FSA was contingent on the continuing equity power of the court to insure compliance. *Stripper Well Exemption Litigation,* 653 F.Supp. 108, 121 (D.Kan. 1986). The district court had jurisdiction over contractual claims concerning the parties to the contract in the multi-district litigation, and specifically over motions to enforce an obligation under the FSA. *Stripper Well Exemption Litigation,* 864 F.2d 796, 800 (TECA 1988).

The court determined that the oil companies' claim of contractual obligation was specious, that their actual goal, clothed in FSA language, was an attack on Alaska's tax assessment. On the basis of this reading of the real issues posed by Exxon and ARCO, it found no jurisdiction.

#### A. *Jurisdiction Under the Economic Stabilization Act*

■ Before the district court Exxon and ARCO argued that this demand for an enforcement of the Agreement was a cause of action arising under the ESA. The court below found that it constituted neither a government enforcement action under § 209 nor a private action for damages under § 210. Nor did it lie within the court's exclusive jurisdiction pursuant to § 211, for the reason that the action was actually intended to be used to defend against the assessment of the state tax action in Alaska.

> Assuming that the action does arise under the Economic Stabilization Act, it is raised by way of defense to the state tax action and pursuant to section 211 does not lie within the exclusive jurisdiction of the federal courts. Exxon and ARCO have brought declaratory judgment actions, seeking a declaration that the state tax is barred by the FSA in order to defend against the assessment of that tax in Alaska. The only potential Economic Stabilization Act issue is whether the state tax is preempted. The taxpayer can make this argument in state court. According to the brief filed in this matter, ARCO has raised the preemption issue in the state proceedings. If any issue governed by the Economic Stabilization Act is raised, it is (or should be) raised as a defense to the state tax action. This court does not have exclusive jurisdiction under the Economic Stabilization Act.

746 F.Supp. at 1468.

Appellants disagree with the court's characterization of their motions as defenses. They argue that they are not defendants in the proceedings herein or before the state court, and that the court's assumption that they are challenging the validity of the state tax rather than trying to enforce a contractual obligation is simply mistaken. They urge the court to recognize that the policy of § 211 favors "funnelling all issues of significance concerning federal energy policy into federal courts." *Scallop Corp. v. Tully,* 705 F.2d 645, 651 (2d Cir.1983) (Mansfield, J., concurring).

We note, however, that *Scallop,* the only case cited to us by the appellants, is one in which the district court dismissed Scallop's declaratory judgment action as "first and foremost a defensive response to New York's administrative efforts to collect its tax," *Scallop Corp. v. Tully,* 546 F.Supp. 745, 751 (N.D.N.Y.1982), and thus not within the exclusive original jurisdiction of the federal district courts under § 211(a).[4] Other courts have seen through similar arguments that the state tax issue is incidental to the actual allegations. *See, e.g., Brooks v. Nance,* 801 F.2d 1237, 1239 (10th Cir.1986); *Sipe v. Amerada Hess Corp.,* 689 F.2d 396, 405 (3rd Cir.1982). In this

---

4. The Second Circuit Court of Appeals dismissed the appeal of this decision on the ground that TECA had exclusive jurisdiction to hear the appeal, since the district court's dismissal of the suit was based upon its interpretation of the ESA and EPAA. *Scallop Corp. v. Tully,* 705 F.2d at 650. By Order of September 8, 1983, TECA granted the parties' stipulation to dismiss without prejudice.

case appellants have not been able to persuade us that their motions, seeking a declaration that the Alaska tax contravenes the FSA and enjoining its assessment against them, were not defensive in nature. Our review of the record clearly indicates that Exxon and ARCO "wish to establish what is in effect a federal defense to a purely state law enforcement action." *Exxon Corp. v. Hunt*, 683 F.2d 69, 73 (3d Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983). That defensive posture is not within the exclusive jurisdiction of § 211. The district court properly refused jurisdiction under the ESA.

### B. *Jurisdiction under the Final Settlement Agreement*

Appellants' sole argument for claiming that their actions arise under the Economic Stabilization Act is that the FSA, which they claim has been violated, is based on that statute. In their motions before the district court Exxon and ARCO claimed that the Agreement "guaranteed the preservation of [their] entitlements benefit," and that "Alaska's effort to appropriate that benefit for itself [by imposition of a tax] violates its undertaking to support the policies and objectives of the agreement."

After noting that neither appellant "identified any specific provision in the FSA controlling the dispute with Alaska," the district court examined various provisions of the Agreement before concluding that

there was nothing in the FSA to enforce against Alaska. 746 F.Supp. at 1469.

The Final Settlement Agreement is completely silent on state taxes. The FSA does *not* provide that the refiners' entitlements benefits were to be protected from any and all attacks by other parties, including the states. The FSA required the dismissal of all litigation against DOE involving Entitlements Program Issues provided that "no further litigation *against DOE* involving any aspect of the Entitlements Program either past or future shall be instituted in any State or Federal court or agency of the United States Government." FSA ¶ V.E. (emphasis added).

746 F.Supp. at 1470.[5]

Appellants' original claim was that Alaska violated the terms of the FSA by depriving them of a substantial portion of the entitlements benefits that the FSA guaranteed them. Apparently conceding on appeal that there was no express provision to which they could point, Exxon and ARCO nevertheless insist now that the district court should have considered an implied contractual obligation of good faith and fair dealing imposed on the states under the FSA. They explain that Paragraph V of the Agreement, "Entitlements Litigation," resolved all entitlements claims and disputes, and preserved each party's entitlement position as of the date of the Agreement. As such, it reflected a comprehensive bargain reached by all parties

---

5. The pertinent provisions under paragraph V of the FSA are:

 E. *Withdrawal of Other Entitlements Litigation.* Within 10 days after commencement of the Entitlements Disbursement, all litigation ... initiated by any Refiner against DOE involving any issue arising out of or involving the Entitlements Program shall be withdrawn or dismissed with prejudice and no further litigation against DOE involving any aspect of the Entitlements Program either past or future shall be instituted in any State or Federal court or agency of the United States Government....

 \* \* \* \* \* \*

 G. *Preservation of Entitlements Claims.* This Agreement specifically excludes and preserves any and all claims by a Refiner applicant against DOE for payment by DOE of (i) exception relief from the crude oil Entitlements Program ... or (ii) any adjustments or changes to

the draft January 1981 Notice or Entitlements Adjustment Notice. This Agreement also specifically excludes any and all claims by a Refiner against DOE for interest on such adjustment or change or exception relief and for attorneys' fees and costs incurred in connection with such relief. DOE agrees to provide all funds necessary to fund and pay all amounts determined to be due any Refiner pursuant to or as a result of any such adjustments or changes or relief including such interest and attorneys' fees, if awarded, out of its share of funds under this Agreement, or out of funds (other than funds resulting from violations or alleged violations except Alleged Crude Oil Violations) to which no other Party has a claim by virtue of this Agreement. DOE's obligations shall not affect the amount or timing of any payment to any other Party made pursuant to this Agreement.

to the FSA, including the states. Appellants insist that Alaska cannot now violate its obligation of good faith and fair dealing by refusing to preserve the entitlements positions of the refiners.

■ It is evident that Alaska did not violate the express terms of the "Entitlements Litigation" section. Paragraph V resolved disputes between the refiners and DOE, and ended entitlements litigation specifically against DOE. However, it neither forbad other litigation nor guaranteed the protection of entitlements benefits. Indeed, it contained no mention of states or of taxes.

■ Appellants ask us to consider the broad meaning of Paragraph V along with "a long-established understanding" that the states could not tax entitlements benefits. They have presented affidavits of those intricately involved in the settlement negotiations as verification of an implied obligation in the FSA not to tax the refiners' entitlements benefits. However, extrinsic evidence regarding the terms of the agreement is properly excluded in light of the absence of any ambiguity in the provisions. *See Stripper Well Exemption Litigation,* 857 F.2d 1481, 1485 (TECA 1988) (Grant, J., concurring); *Stripper Well Exemption Litigation,* 855 F.2d 865, 868 (TECA 1988). Because we have found that the terms of Paragraph V focused on the Agreement between DOE and the refiners, and unambiguously contained no reference to the states or to implied obligations, we will not consider the extrinsic evidence. Furthermore, we find nothing in the provision that could reasonably be construed to constitute an agreement to refrain from imposing a tax. *See, e.g., REO Industries, Inc. v. Natural Gas Pipeline Co. of America,* 932 F.2d 447, 455 (5th Cir.1991).

■ In fact, after reviewing the entire Agreement we conclude that appellants' allegation of breach of an implied obligation of good faith is vacuous. Good faith performance of a contract emphasizes faithfulness to an agreed common purpose in the contract and consistency with the justified expectations of the other party to the contract. Restatement (Second) of Contracts § 205 (1979). While this obligation may be implied in the FSA, as in any contract, the good faith duty must reasonably apply to the contract's provisions, which reflect the parties' intentions.[6] *See, e.g., Love v. United States,* 915 F.2d 1242, 1248 (9th Cir.1989) (nature and extent of implied good faith covenant measured in particular contract by justifiable expectations of parties); *A/S Apothekernes Laboratorium v. I.M.C. Chemical Group, Inc.,* 873 F.2d 155, 159 (7th Cir.1989) (in negotiations, scope of good faith obligation defined by terms established by parties). Appellants have failed to indicate to what portions of the Agreement this implied duty attaches or in what way a tax can be considered bad faith conduct under the FSA. Nor have they shown that Alaska's conduct, as it applies to the Agreement, was arbitrary, capricious or unreasonable, or exceeded their justifiable expectations. *See Love, supra* (quoting *Nicholson v. United Pacific Insurance Co.,* 710 P.2d 1342, 1348 (1985)). We decline to imply a duty of good faith when the content of any such duty is entirely unclear.

■ Nor do we find any justification for imposing on Alaska a duty not to tax entitlements benefits. No provision of the FSA explicitly or implicitly forbids such taxes, and nothing in the substance of the Agreement can form the basis for an implied obligation under the FSA. Furthermore, nothing in the nature of the relationship between these parties suggests that Exxon and ARCO could reasonably have expected Alaska not to impose a tax when the Agreement between them does not consider the issue. A government's authority to tax is one of its sovereign powers, one that will remain intact unless specifically and unmistakably surrendered. *Bowen v. Public Agencies Opposed to Social Security Entrapment,* 477 U.S. 41, 52, 106 S.Ct. 2390, 2396–97, 91 L.Ed.2d 35 (1986); *Merrion v. Jicarilla Apache Tribe,* 455 U.S.

---

**6.** We remind appellants that an implied duty of good faith is usually a matter of state law, and may best be pursued under statutory provisions in state courts.

130, 148, 102 S.Ct. 894, 907, 71 L.Ed.2d 21 (1982); *Western Fuels–Utah, Inc. v. Lujan,* 895 F.2d 780, 789 (D.C.Cir.1990); *Atlantic Richfield Co. v. State,* 705 P.2d 418, 438 (Alaska 1985), *appeal dismissed,* 474 U.S. 1043, 106 S.Ct. 774, 88 L.Ed.2d 754 (1986). No such surrender or waiver of a state's right to tax was made in the FSA.

 Just as a contract must not be construed to abrogate a state's sovereign power to tax, so too it must not be read or interpreted to waive a state's sovereign immunity from suit. Sovereign immunity, guaranteed under the eleventh amendment of the United States Constitution,[7] bars actions in federal courts against the United States and against individual states, absent consent by that defendant. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). A state's waiver of its immunty and consent to suit in federal court must be unequivocally expressed. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907.

 The district court found that no provision in the FSA contained a consent by a state to suit. In fact, according to the court's construction, paragraph II.A.1 of the FSA "reflects that when the states became signatories of the Final Settlement Agreement, they did not waive their Eleventh Amendment immunity from suit."[8] *In re Department of Energy Stripper Well Litigation,* 746 F.Supp. at 1469. *See also In re Department of Energy Stripper Well Litigation,* 739 F.Supp. 1449, 1454 (D.Kan.1990).

We find no waiver of Alaska's sovereign immunity or consent to suit in any provision of the Final Settlement Agreement. Nor can such a waiver be found in the Economic Stabilization Act on which the FSA is based. This court has found that "[t]he traditional doctrine of sovereign immunity holds that in the absence of express and unambiguous congressional consent, the United States is not subject to suit." *Lunday–Thagard Co. v. U.S. Department of Interior,* 773 F.2d 322, 323 (TECA 1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986), citing *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). In *Lunday–Thagard* this court found that ESA §§ 210 and 211 do not constitute a waiver by the government of its sovereign immunity for claims arising under the ESA and EPAA.

 The eleventh amendment bars a suit against an unconsenting state whether the suit seeks damages or injunctive relief. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909. Just as we have found that, absent an express waiver, the United States is immune from suit for money damages allegedly caused by violations of the ESA and EPAA, *TransAmerican Natural Gas Corp. v. Department of Interior,* 816 F.2d at 692, we hold now that the state of Alaska, without expressly consenting to suit, is immune from this action seeking injunctive relief for Alaska's alleged violations of the ESA.

In light of the absolute requirement of an express waiver of sovereign immunity, appellants' argument that a waiver can be implied because Alaska's tax is a special, targeted tax fails. Moreover, the interpretation of the intent of this tax is an issue appropriate to the Alaska state courts.[9]

---

7. The eleventh amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

8. Paragraph II.A.1 of Final Settlement Agreement provides in pertinent part:
 ... A Party who is not otherwise a party to M.D.L. 378 shall not become or be considered a party to M.D.L. 378 by reason of having executed this Agreement nor shall execution hereof be probative of making any Party a party to M.D.L. 378, although all Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court approving and enforcing the Agreement.

9. To the extent Exxon and ARCO have relied upon *Murray v. City of Charleston,* 96 U.S. 432, 24 L.Ed. 760 (1878) and *Puerto Rico v. Russell & Co.,* 315 U.S. 610, 62 S.Ct. 784, 86 L.Ed. 1062 (1942) for the argument that a state cannot, "under the guise of taxation, relieve itself from performing" its contractual obligations, that re-

We conclude that there is no basis in the Agreement or in the ESA for the argument that Alaska waived its sovereign right to collect a tax from the oil companies.

## IV. ESTOPPEL CLAIM

Appellants claimed before the district court that there was evidence suggesting that Alaska had formed an intention to assess a tax on entitlements while the settlement negotiations were underway, but remained silent. Based upon this allegation, they requested that Alaska be estopped from enforcing the tax and that they be allowed discovery. The district court summarily rejected this claim; it saw no "sinister motives" on Alaska's part for introducing the tax after the Final Settlement Agreement was executed. 746 F.Supp. at 1470.

Because we have found that the tax is in no way related to the FSA or the ESA, and therefore not "relevant to the subject-matter of the litigation" pursuant to Fed. R.Civ.P. 26(b)(1), we will not address this claim. Once again we note that it might properly be raised before the state court.

## V. CONCLUSION

This case is properly before TECA, for the district court clearly considered and adjudicated two ESA issues, the scope of the ESA's exclusive jurisdictional provisions and the nature of the FSA estab-

lished pursuant to that Act and its regulations. Therefore we have exclusive appellate jurisdiction over the appeal challenging the decision below. However, we must decline consideration of the non-ESA/EPAA issues, deferring instead to the Tenth Circuit Court of Appeals before which these issues are raised.

We affirm the district court's determination that there were no issues related to the provisions of the FSA over which we have jurisdiction. The exclusive jurisdiction section of the ESA does not apply, because no ESA issue was raised. Even if we had accepted appellants' assertion that their claims came within the ESA provisions, we recognized that their motions were raised as a defense to a state action, and hence must be left to the jurisdiction of the state courts. Moreover, because there was no unequivocally expressed waiver of Alaska's sovereign immunity from suit under the terms of the FSA or the statutory provisions of the ESA, the eleventh amendment bars this action against the state.

The dismissal of this case by the district court for lack of jurisdiction is hereby AFFIRMED.

---

liance is misplaced. Neither discusses targeted taxes. *Murray* struck down a tax that had clearly impaired an express, not implied, promise. 96 U.S. at 448. Likewise, *Puerto Rico* concerned contracts concerning special assessments that

*clearly defined* the state's obligations to certain landowners. We find both cases inapposite.